UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| PHYLLIS J. LAWRENCE, | |
| Plaintiff, | Case No. 3:21-cv-00031 |
| v. | Judge Eli J. Richardson |
| | Magistrate Judge Alistair E. Newbern |
| DENIS McDONOUGH, United States Secretary of Veterans Affairs, | |
| Defendant. | |

To:     The Honorable Eli J. Richardson, District Judge

## REPORT AND RECOMMENDATION

This employment discrimination action brought under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e–2000e-17, and the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621–634, arises out of pro se Plaintiff Phyllis J. Lawrence's employment as a nurse manager at the Department of Veterans Affairs (VA) Tennessee Valley Healthcare System (TVHS) in Nashville, Tennessee. (Doc. No. 11.) Lawrence alleges that she experienced discrimination and a hostile work environment based on her race and age and experienced retaliation for reporting the discrimination. (*Id.*) The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions under 28 U.S.C. § 636(b)(1)(A) and (B). (Doc. No. 6.)

Defendant Secretary of Veterans Affairs Denis McDonough has filed a motion for summary judgment under Federal Rule of Civil Procedure 56 (Doc. No. 45), supported by a memorandum of law (Doc. No. 53), a statement of undisputed material facts (Doc. No. 47), sworn declarations (Doc. Nos. 48–51), and exhibits (Doc. Nos. 53-1–53-3). Lawrence has responded in

opposition to McDonough's motion for summary judgment (Doc. No. 59), but she has not responded to his statement of undisputed material facts and has not filed any other supporting materials for the Court's consideration.

For the reasons that follow, the Magistrate Judge will recommend that the Court grant McDonough's motion for summary judgment.

## I.    Background

### A.    Factual Background

Lawrence is an African-American woman and was born on September 8, 1962. (Doc. Nos. 47, 53-1.) She worked for the VA Regional Office in Nashville as an administrative assistant and executive secretary for thirteen years before returning to school and starting her nursing career in 1992. (Doc. Nos. 47, 53-1.) Lawrence worked as a Licensed Practical Nurse (LPN) at TVHS and for other employers during the 1990s, earned a bachelor's degree in 2002, worked as a Registered Nurse (RN) at TVHS in 2003, and earned a master's degree in 2005. (Doc. Nos. 47, 53-1.) She then "worked continuously" at TVHS "from 2005 until she retired in 2021." (Doc. No. 47, PageID# 435, ¶ 7.) Lawrence was promoted from staff nurse to nurse manager in 2006, and she earned a doctorate in 2013. (Doc. No. 47.)

Lawrence testified that, when she was working as a nurse manager in the TVHS urology clinic in 2012, there was a problem with physicians leaving dirty scopes out overnight or over the weekend, which lead to the scopes becoming unusable or breaking. (Doc. No. 53-1.) Lawrence spoke to the physicians about the problem; they "blew [her] off[,]" so she "complained again." (*Id.* at PageID# 1033.) Lawrence testified that, from then on, the physicians and some of the nurses picked on her. (Doc. No. 53-1.)

Between 2014 and 2020, Lawrence filed six equal employment opportunity (EEO) complaints regarding her employment at TVHS. (Doc. Nos. 35-1–35-6, 47, 48, 48-1–48-6.) Her

2

complaints alleged that she experienced discrimination because of her race and age and experienced retaliation for reporting unsafe work conditions and for engaging in EEO activity. (*Id.*) Among other incidents, Lawrence complained that she was repeatedly denied promotions, was removed from the Nurse Professional Standards Board (NPSB), did not receive additional pay during a temporary detail, and received an undeservedly poor performance review because of her race, age, and EEO activity. (*Id.*) She also alleged that TVHS Chief of Staff Dr. John Nadeau made derogatory comments about her during a meeting with other TVHS staff members. (Doc. No. 35-6.) The VA adjudicated Lawrence's EEO complaints and found no discrimination, and the U.S. Equal Employment Opportunity Commission (EEOC) affirmed the VA's decisions. (Doc. No. 53-3.)

## B.    Procedural History

Lawrence initiated this action on January 14, 2021, by filing a pro se complaint under Title VII and the ADEA.[1] (Doc. No. 1.) Lawrence filed an amended complaint with the Court's leave on February 24, 2021, asserting discrimination, retaliation, and hostile work environment claims under Title VII and the ADEA and seeking money damages.[2] (Doc. No. 11.) Lawrence alleged that TVHS had failed to promote her, tripled her workload, denied her training and

---

[1]      Lawrence also filed an application for leave to proceed *in forma pauperis* (Doc. No. 2), but the Court denied the application after finding that paying the Court's civil filing fee would not impose an undue hardship on Lawrence (Doc. No. 4). Lawrence has since paid the filing fee. (Doc. No. 5.)

[2]      The Court explained in a prior report and recommendation that, "[o]n June 3, 2021, Lawrence filed another document titled 'Amended Complaint' that consists of excerpts from her February 24, 202[1] pleading and an additional certificate of service dated June 3, 2021." (Doc. No. 38, PageID# 179 n.3 (citing Doc. No. 16).) However, because "Lawrence did not seek the Court's leave to file another amended complaint[,]" the Court found that "[t]he operative pleading in this action remains the amended complaint filed on February 24, 2021." (*Id.* (citing Doc. No. 11).)

leadership opportunities, and that TVHS's chief of staff referred to her using a racial slur during a meeting with other TVHS employees. (*Id.*)

McDonough filed a motion to dismiss in part Lawrence's amended complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that the Court should dismiss some of Lawrence's Title VII claims for failure to state claims on which relief can be granted. (Doc. No. 33.) Specifically, McDonough argued that Lawrence could not state a Title VII retaliation claim based on her reporting of unsanitary practices in the urology clinic and that Lawrence had failed to exhaust her administrative remedies with respect to eight of her failure-to-promote claims, her claim that TVHS tripled her workload, her claim that TVHS denied her training and leadership opportunities, and her claim that TVHS's chief of staff subjected her to specific racial slurs. (Doc. No. 34.) Lawrence responded in opposition to McDonough's motion to dismiss. (Doc. No. 37.)

The Magistrate Judge recommended that the Court grant in part and deny in part McDonough's motion, finding that Lawrence had failed to state Title VII claims based on her reporting of unsafe and unclean practices in the TVHS urology clinic, the eight non-selections that McDonough identified in his motion, and her allegations that TVHS tripled her workload and denied her training and leadership opportunities. (Doc. No. 38.) However, the Magistrate Judge recommended allowing Lawrence's Title VII claim based on allegations that TVHS's chief of staff called her a racial slur to proceed for further development. (*Id.*) Neither party objected to the Magistrate Judge's report and recommendation, and the Court adopted it, granting in part and denying in part McDonough's motion to dismiss. (Doc. No. 39.) McDonough answered the remaining claims in Lawrence's amended complaint. (Doc. No. 42.)

On October 20, 2023, McDonough filed a motion for summary judgment under Rule 56 (Doc. No. 45), supported by a memorandum of law (Doc. No. 53), a statement of undisputed

4

material facts (Doc. No. 47), declarations (Doc. Nos. 48–51), and exhibits including excerpts from Lawrence's deposition in this action (Doc. Nos. 53-1–53-3). McDonough argues that he is entitled to summary judgment on Lawrence's remaining Title VII and ADEA claims because there are no genuine disputes of material fact that Lawrence's non-selections for promotion were not discriminatory, that Lawrence did not suffer any other adverse employment actions based on her race, age, or EEO activity, and that Lawrence was not subjected to a hostile work environment. (Doc. No. 53.)

Lawrence filed an unsworn response in opposition to McDonough's summary judgment motion arguing that "[t]here is no doubt that . . . [she] was the subject of bullying and harassment" and that her "work environment was hostile[.]" (Doc. No. 59, PageID# 1177.) Lawrence did not file a declaration in support of her opposition, but she asserts that two declarations McDonough filed from TVHS doctors "were in error" and contain statements "made to destroy [Lawrence's] credibility and character[.]" (*Id.* at PageID# 1178.) She asks the Court to allow her "claims of race and age discrimination" and "retaliation for prior EEO activity" to proceed "to trial." (*Id.* at PageID# 1179.) Lawrence did not respond to McDonough's statement of undisputed material facts, and she has not filed any other summary judgment materials for the Court's consideration.

McDonough did not file an optional reply in support of his motion for summary judgment.

## II.     Legal Standard

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). However, if the moving party carries its initial burden, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*

## III.    Analysis

### A.    Local Rule 56.01 and McDonough's Initial Burden Under Federal Rule of Civil Procedure 56

This Court's Local Rule 56.01 provides that "any motion for summary judgment . . . must be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." M.D. Tenn. R. 56.01(b) (statement of undisputed material facts). Under this rule, "[e]ach fact must be set forth in a separate, numbered paragraph [and] . . . must be supported by specific citation to the record." *Id.* Any party opposing a motion for summary judgment must specifically respond to each asserted fact by: "(1) Agreeing that the fact is undisputed; (2) Agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) Demonstrating that the fact is disputed. Each disputed fact must be supported by specific citation to the record." M.D. Tenn. R. 56.01(c) (response to statement of facts). Furthermore, "[t]he response must be made on the document provided by the movant or on another document in which the non-movant has reproduced the facts and citations verbatim as set forth by the movant" and "must be filed with the papers in opposition to the motion for summary judgment." *Id.*

Pro se parties are not excused from complying with these rules. *See* M.D. Tenn. R. 56.01(b)–(c). Indeed, the Court's scheduling order in this action instructed the parties to "refer to Federal Rule of Civil Procedure 56 and Local Rule 56.01 for summary judgment procedures[,]" described Local Rule 56.01's requirements, and warned the parties that "[f]ailure to respond in opposition to a statement of material fact may result in the Court assuming that the fact is true for purposes of summary judgment." (Doc. No. 40, PageID# 192); *see also* M.D. Tenn. R. 56.01(f) (failure to respond) ("If a timely response to a moving party's statement of material facts . . . is not

filed within the time periods provided by these rules, the asserted facts shall be deemed undisputed for purposes of summary judgment.").

McDonough filed a statement of undisputed material facts that complies with Local Rule 56.01(b) and is supported by specific record citations. (Doc. No. 47.) Lawrence did not respond to McDonough's statement of undisputed material facts as required by Local Rule 56.01(c). Under Local Rule 56.01(f), the Court must therefore consider McDonough's asserted facts to be true for purposes of summary judgment. M.D. Tenn. R. 56.01(f). That does not mean, however, that the Court must grant McDonough's motion for summary judgment on that basis. McDonough must still carry his initial burden to show an absence of any genuine dispute of material fact. *See Carver v. Bunch*, 946 F.2d 451, 454–55 (6th Cir. 1991) ("[A] party moving for summary judgment always bears the burden of demonstrating the absence of a genuine issue as to a material fact . . . regardless if an adverse party fails to respond."); *Felix v. Young*, 536 F.2d 1126, 1135 (6th Cir. 1976) ("[T]he fact that the movant's affidavits are uncontroverted does not necessarily mean that summary judgment should be granted[;] the ultimate burden of proving the propriety of summary judgment remains on the moving party.").

"Rule 56 first imposes a burden of production on the moving party to make a prima facie showing that it is entitled to summary judgment." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. supp. Apr. 2023). "In this context, a 'prima facie' showing means that, in the absence of evidence to the contrary, the movant's evidence is sufficient to entitle the movant to summary judgment." 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.40 (2023). Courts must view the movant's evidence in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970) ("[T]he moving party . . . ha[s] the burden of showing the absence of a genuine issue as to any material

fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party."). If the moving party's evidence is insufficient, "'[n]o defense . . . is required'" and summary judgment must be denied. *Id.* at 161 (quoting 6 James Wm. Moore et al., *Moore's Federal Practice* § 56.22(2) (2d ed. 1966)); *see also* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2727.1 (4th ed. supp. Apr. 2023) ("If the movant fails to make that initial showing, the court must deny the motion, even if the opposing party has not introduced contradictory evidence in response.").

The Court must therefore examine the evidence that McDonough offers in support of his motion to determine if it is sufficient to satisfy his initial summary judgment burden with respect to each of Lawrence's claims before evaluating Lawrence's response in opposition. *See Adickes*, 398 U.S. at 160 ("'[W]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.'" (quoting Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment)); *see also Nissan Fire & Marine Ins. Co. v. Fritz Co.*, 210 F.3d 1099, 1106 (9th Cir. 2000) (holding that defendant "did not carry its initial burden of production" where evidence it produced in support of motion for summary judgment "purport[ed] to negate an essential element of plaintiffs' claim—timely notice—but . . . d[id] not actually do so"). Rule 56(c)(3) provides that the Court "need consider only" materials cited by the parties in their summary judgment briefing, "but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3); *see also* Fed. R. Civ. P. 56(c) advisory committee's note to 2010 amendment ("[A] court may consider record materials not called to its attention by the parties.").

## B.     Lawrence's Title VII and ADEA Claims

Title VII and the ADEA prohibit employers from discharging or otherwise discriminating against any employee with respect to the compensation, terms, conditions, or privileges of her

employment because of race, color, religion, sex, or national origin (under Title VII), or age (under the ADEA). 42 U.S.C. § 2000e-2(a)(1); 29 U.S.C. § 623(a)(1). Both statutes also prohibit employers from discriminating against any employee in retaliation for opposing such discrimination. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). Because the relevant provisions of both statutes are substantially similar, courts generally analyze discrimination and retaliation claims brought under Title VII and the ADEA under the same legal framework. *Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014), *cert. denied*, 574 U.S. 1104 (2015); *see also Everson v. Mich. Dep't of Corr.*, 391 F.3d 737, 748 n.15 (6th Cir. 2004) (explaining that "[t]he provisions of the ADEA generally receive an identical interpretation to corresponding provisions of Title VII" (quoting *Lilley v. BTM Corp.*, 958 F.2d 746, 750 n.2 (6th Cir. 1992))), *cert. denied*, 546 U.S. 825 (2005).

The legal framework courts use to evaluate Title VII and ADEA claims at the summary judgment stage varies depending on whether the plaintiff's claims are supported by direct or circumstantial evidence of discrimination or retaliation. *See Rogers v. Henry Ford Health Sys.*, 897 F.3d 763, 771–72 (6th Cir. 2018); *Barrett*, 556 F.3d at 514–15; *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). "Direct evidence is that evidence which, if believed, requires no inferences to conclude that unlawful [discrimination or] retaliation was a motivating factor in the employer's action." *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 543–44 (6th Cir. 2008). Because the record does not contain any such direct evidence, the Court must evaluate Lawrence's Title VII and ADEA claims under the burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Rogers*, 897 F.3d at 771; *Imwalle*, 515 F.3d at 544. Under the *McDonnell Douglas* framework, McDonough can satisfy his initial summary judgment burden by demonstrating that there is no genuine dispute of material fact that

Lawrence cannot establish a prima facie case of discrimination, retaliation, or hostile work environment based on the circumstantial evidence in the summary judgment record. *See Rogers*, 897 F.3d at 772; *Barrett*, 556 F.3d at 515. If he does so, the burden shifts to Lawrence to identify record evidence sufficient to create a genuine dispute of material fact that she can establish a prima facie case for each claim. If Lawrence shows such a genuine dispute, "the burden shifts to [McDonough] to proffer a legitimate, nondiscriminatory [or nonretaliatory] reason for its decision." *Rogers*, 897 F.3d at 772 (alteration in original) (quoting *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584 (6th Cir. 2009)). If McDonough meets this burden, Lawrence must then present record evidence sufficient to create a genuine dispute of material fact "that the reasons offered by [McDonough] were pretextual." *Id.* (quoting *Upshaw*, 576 F.3d at 584).

### 1. Discrimination

Lawrence asserts Title VII and ADEA discrimination claims based on her non-selection for promotions, removal from the NPSB, denial of temporary promotion pay, and receipt of a poor performance review.

The elements of a prima facie case of discrimination based on race or age are that: (1) an employee was a member of a protected class or was at least 40 years old; (2) she suffered an adverse employment action or actions; (3) she was qualified for her position; and (4) she was treated less favorably than someone outside the protected class, or someone younger, who was similarly situated. *See Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010); *Knox v. Neaton Auto Prods. Mfg., Inc.*, 375 F.3d 451, 456–57 (6th Cir. 2004). In the context of Title VII and ADEA discrimination claims, "[a]n adverse employment action 'constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014) (quoting *Burlington Indus., Inc. v.*

*Ellerth*, 524 U.S. 742, 761 (1998)). To satisfy his initial summary judgment burden regarding Lawrence's discrimination claims, McDonough must show that there are no genuine disputes of material fact that Lawrence cannot satisfy all four prima facie elements or, if there are genuine disputes, McDonough must articulate a legitimate, nondiscriminatory reason for the challenged adverse action.

### a. Non-Selections

McDonough identifies nine remaining instances in which Lawrence was not selected for a position and argues that, for each one, Lawrence either cannot establish a triable issue of fact as to her prima facie case of discrimination or cannot rebut TVHS's legitimate nondiscriminatory reasons for not selecting her. (Doc. No. 53.) The nine positions for which Lawrence was not selected are: (1) Patient Safety Officer (Nurse IV); (2) Chief Nurse (Outpatient Specialty Clinics); (3) Registered Nurse (Assistant Chief, Quality, Safety & Value); (4) Deputy Quality Management Officer (Nurse IV); (5) Registered Nurse (Assistant Chief, Quality, Safety & Value); (6) Chief Nurse (Primary Care & CBOCs, Mental Health, Medicine and Surgery); (7) Registered Nurse (Chief of Education); (8) Registered Nurse (Deputy Associate Director Patient Care Services); and (9) Registered Nurse (Chief of Operations). (*Id.*; Doc. No. 47.)

With respect to Lawrence's first non-selection for the position of Patient Safety Officer (Nurse IV), McDonough asserts that Lawrence applied for the job and was "ranked 12th of 24 candidates" based on her application and resume (Doc. No. 47, PageID# 447, ¶ 72); she "was not selected for interview because interviews were only conducted for the top seven candidates" (*id.* at PageID# 448, ¶ 73); the individual selected for the position was "a White female in her 40s" who "had applicable experience in quality management at the facility level as a risk manager, [and] had a strong clinical background and strong references" (*id.* at PageID# 448–49, ¶¶ 78, 79), while

Lawrence's "resume did not indicate facility-wide program oversight; she had only unit level oversight" (*id.* at PageID# 449, ¶ 80).

For the second non-selection for the position of Chief Nurse (Outpatient Specialty Clinics), McDonough asserts that because "there were several 'internal' candidates interested in this position, [the TVHS selecting official] selected an outside screening and first level interview panel to ensure no bias" (*id.* at PageID#450, ¶ 85); Lawrence "scored 20 points below the top four candidates, and only the top four candidates were interviewed" (*id.* at ¶ 88); "[t]he selectee was Dr. Angela Malik, a Black Female in her 40s" who "possessed Board certification as a Nurse Executive, CPHQ & CRMST, and [ ] was a VA certified mentor" (*id.* at PageID# 451, ¶¶ 91, 92); Malik was also "familiar with specialty clinics as the previous RME Coordinator[,]" "answered the questions well in her interview[,] and had a favorable communication style" (*id.* at ¶¶ 93, 94).

For the third non-selection, McDonough asserts that no one was selected to fill the position of Registered Nurse (Assistant Chief, Quality, Safety & Value) the first time it was announced (*id.* at PageID# 452, ¶ 100), and that "[t]he position was reposted because" the selecting official determined that "the initial applicant pool was lacking" and he "wanted to attract more candidates with direct quality experience" (*id.* at ¶ 101).

With respect to the fourth non-selection for the position of Deputy Quality Management Officer (Nurse IV), McDonough asserts that Lawrence "ranked second after the interview and Jeanne Poindexter ranked first" (*id.* at PageID# 455, ¶ 120); "Poindexter was a White female in her mid-40s to 50s" who "had years of experience as a Quality Management Officer at a complex 1a facility responsible for all areas of the quality program services" and "had very strong references" (*id.* at PageID# 455, 456, ¶¶ 121, 126, 127); the interview "panel members were unaware of [Lawrence's] race, age, and prior EEO activity" (*id.* at PageID#456, ¶ 123); one panel

member "felt that [Lawrence] had stronger academic skills but did not have as much experience as Ms. Poindexter in all areas that [the quality management officer] oversees" (*id.* at ¶ 122); "[t]he selectee was Ms. Poindexter" (*id.* at ¶ 125); "[c]ompared to [Lawrence], Ms. Poindexter had greater applicable skills and experience, as well as a higher ranking on interview and BQ processes" (*id.* at PageID# 457, ¶ 128).

For the fifth non-selection for the re-posted position of Registered Nurse (Assistant Chief, Quality, Safety & Value), McDonough asserts that "[t]he selection process included resume review and scoring, as well as [Performance Based Interview (PBI)] questions and scoring" (*id.* at PageID# 453, ¶ 105); "[b]ased on the panel interview scores, [Lawrence] ranked third among the candidates and Mary Shannon Baker ranked second" (*id.* at ¶ 107); Baker was "a White female" whose "age [is] unknown" (*id.* at PageID# 454, ¶ 112); one panel member who "observed [Lawrence's] race during the interview but was unaware of her age and prior EEO activity" and who sits "on at least five to ten interview panels per year . . . stated that Ms. Baker received 'one of the best interviews scores he has ever given anyone[ ]'" and "'was phenomenal'" (*id.* at PageID# 453, 454 ¶¶ 104, 108, 109); the panel member further stated that, '[w]hile [he] think[s] [Lawrence and Baker] were probably both qualified for the job, the interview from Ms. Baker was just the best [he had] ever heard'" (*id.* at PageID# 454, ¶ 110); "[t]he Selecting Official . . . was not aware of [Lawrence's] race, age, or prior EEO activity" (*id.* at ¶ 111); "[t]he selectee was Mary Shannon Baker" (*id.* at ¶ 112).

For the sixth non-selection for the position of Chief Nurse (Primary Care & CBOCs, Mental Health, Medicine and Surgery), McDonough asserts that Lawrence was one of five applicants "selected to participate in [ ] second level interviews" (*id.* at PageID# 463, ¶ 158); "[t]hree candidates interviewed, including [Lawrence], while two declined" (*id.* at ¶ 159); after the

interviews, Lawrence "trailed the other two candidates [Clare O'Geary and Sara Wiseman] in scoring . . ." (*id.* at ¶ 160); following the third and final round of interviews with a three-member executive panel, the "panel members unanimously agreed that the other candidates interviewed better than [Lawrence] and had a better understanding of Primary Care" (*id.* at PageID# 464, ¶ 163); the selecting official "chose O'Geary to fill the position, but O'Geary declined and accepted a position at another VA facility" (*id.* at ¶ 165); "Wiseman became the ultimate selectee because she had 25 years of Primary Care experience as both an RN and a nurse practitioner, and performed exceptionally when she held the role of Acting Chief Nurse" (*id.* at ¶ 166); Wiseman also "had a clear understanding of the challenges in the role as Chief Nurse of Primary Care and how best to address those challenges" (*id.* at PageID# 465, ¶ 167).

With respect to the seventh non-selection for the position of Registered Nurse (Chief of Education), McDonough asserts that "[a] black female was initially offered the position, but she declined, and a White male was hired under special hiring authority." (*Id.* at PageID# 468, ¶ 187.)

For the eighth non-selection for the position of Registered Nurse (Deputy Associate Director Patient Care Services), McDonough asserts that two panel members who had never met Lawrence and were unaware of her race, age, and prior EEO activity reviewed and ranked twenty applicants' resumes using a scoring grid based on the applicants' education, certifications, VA experience, leadership experience, resource utilization, performance, collegiality, and quality of care (*id.* at PageID# 469–70, ¶¶ 190–201); one panel member scored Lawrence tenth out of twenty (*id.* at PageID# 471, ¶ 204); the other panel member scored her ninth out of twenty (*id.* at PageID# 472, ¶ 210); Lawrence "was not interviewed because she did not score high enough during the resume review . . ." (*id.* at ¶ 212); the selectee was "Kathleen Nieves [ ], a White female, age 46" (*id.* at ¶ 213) who "had multiple years of service-level leadership experience across

multiple settings and was serving in the Executive Deputy ADPCS position at another 1A facility within the VA" (*id.* at PageID# 473, ¶ 214); Nieves's "diverse background in nursing, self-direction and effective communication style allowed her to be very successful in her acting role as the Deputy ADPCS [at] her [prior] facility where she made multiple changes and implementations to provide quality care to Veterans" (*id.* at ¶ 215 (alterations in original)); the selecting official "testified that [Lawrence's] age, race[,] and prior EEO activity were not factors in [her] non-selection" (*id.* at ¶ 217).

For the ninth non-selection for the position of Registered Nurse (Chief of Operations), McDonough asserts that the selecting official "decided to cancel the announcement due to staffing/budget restraints" and that "applicants were not reviewed, and no selection was ever made." (*Id.* at PageID# 474, ¶ 220.)

Because Lawrence did not respond to McDonough's statement of undisputed material facts, the Court must deem these asserted facts true for purposes of summary judgment. *See* M.D. Tenn. R. 56.01(f). Consequently, the Court finds that McDonough has carried his initial burden to demonstrate the absence of any genuine disputes of material fact that he is entitled to summary judgment on Lawrence's Title VII and ADEA discrimination claims based on Lawrence's non-selections for promotions.

To the extent that McDonough has offered legitimate non-discriminatory reasons for Lawrence's non-selections and supported those reasons with citations of specific record evidence, Lawrence bears the burden to show a question of fact that the proffered reasons were a pretext for discrimination. *See Rogers*, 897 F.3d at 777. To meet this burden, Lawrence must produce evidence sufficient for a reasonable jury to find, with respect to each non-selection claim, "'that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's

challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Id.* (quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 597 (6th Cir. 2007)). But Lawrence has not provided any evidence to create a question of fact that McDonough's asserted reasons for her non-selections were actually a pretext for discrimination. Instead, Lawrence argues that, for "most" of the non-selections, the selected "candidates were less qualified, had less training, credentials, and education" and that, for some of the non-selections, "a non-minority, younger candidate was selected." (Doc. No. 59, PageID# 1177.) She argues that "[d]ocuments were submitted in each [EEO] case" including evidence of "discrepancies in [candidate] scoring and changed [hiring] panel notes" (Doc. No. 59, PageID# 1177), but Lawrence has not identified any such evidence in the summary judgment record that the Court may consider in this action.

Lawrence's conclusory, unsworn, and unsupported statements are insufficient to create genuine issues of material fact to defeat McDonough's motion. *See, e.g.*, *Anderson*, 477 U.S. at 252; *Blizzard*, 698 F.3d at 282. McDonough is therefore entitled to summary judgment on Lawrence's Title VII and ADEA discrimination claims based on her non-selections for promotions.

### b. Removal From the NPSB

Lawerence alleged in her first EEO complaint that, "[o]n June 25, 2014, [she] learned she had been removed as the Nashville Co-Chair of the Nurse Professional Standards Board [NPSB], although her appointment was not scheduled to end until October 1, 2014." (Doc. No. 48-1, PageID# 484, ¶ III.8 (third alteration in original).) According to the EEO investigative report, Lawrence "felt she was discriminated against based on her race and EEO activity because she had Caucasian colleagues that were in a similar situation and they were not [re]moved." (*Id.* at PageID# 494.) McDonough argues that, to the extent Lawrence asserts Title VII and ADEA discrimination claims based on her removal from the NPSB, he is entitled to summary judgment

because the undisputed record evidence shows that Lawrence asked to be removed from the NPSB. (Doc. No. 53.)

McDonough asserts the following facts in support of his argument: Lawrence "had been a Co-Chair of the Nurse Professional Standards Board (NPSB) for the previous five years" when, "[i]n December 2013, [she] asked to be removed from the Board[.]" (Doc. No. 47, PageID# 444, ¶¶ 55, 56.) "[B]ecause members rotate, Janice Cobb, TVHS Associate Director for Nursing, asked if [Lawrence] would remain until the rotation started" and "[Lawrence] agreed." (*Id.* at ¶ 56.) "In February 2014, [Lawrence] again asked if new Board members had been appointed and they had not so she continued her service." (*Id.* at ¶ 57.) "Cobb removed [Lawrence] from the Board that summer and [Lawrence] learned of her removal on or about June 25, 2014." (*Id.* at ¶ 58.) Lawrence claimed that "Cobb removed her prematurely, as she was not supposed to be removed until October 2014." (*Id.* at PageID# 445, ¶ 59.) And Lawrence's co-chair Betty Bell, who was a "White female[,]" "also requested removal from the Board . . . [and] was asked to remain until new appointments were in place." (*Id.* at ¶¶ 60, 61.) However, "Bell was not dismissed in the summer but was, instead, kept on until October 2014." (*Id.* at ¶ 62.) Lawrence has not responded to these asserted facts, and the Court must therefore take them as true for purposes of summary judgment. *See* M.D. Tenn. R. 56.01(f). The Court finds that McDonough has carried his initial burden by articulating a legitimate, nondiscriminatory reason for Lawrence's removal from the NPSB, which is that she asked to be removed.

Lawrence has not provided any evidence sufficient to create a question of fact that McDonough's asserted reason for her removal from the NPSB was actually a pretext for discrimination. In fact, her response in opposition to McDonough's summary judgment motion does not address this claim. McDonough has therefore shown that he is entitled to summary

judgment on Lawrence's Title VII and ADEA discrimination claims based on her removal from the NPSB.

### c. Denial of Temporary Promotion Pay

In connection with her third EEO complaint, Lawrence alleged that, on April 3, 2017, she "completed a ninety[-]day detail in the position of Chief Nurse (RN IV), Specialty Outpatient Clinics" at TVHS but "did not receive RN IV pay during her detail" because of her race and age. (Doc. No. 35-3, PageID# 153.) McDonough argues that, to the extent Lawrence asserts Title VII and ADEA discrimination claims based on this allegation, he is entitled to summary judgment because there is no genuine dispute of material fact that none of the three individuals detailed to this position received increased pay. (Doc. No. 53.)

In support of this argument, McDonough asserts that, in 2016, Dr. Patricia Richardson "announced a detail opportunity for the position of Chief Nurse, Outpatient Specialty Clinics, and asked [Lawrence] if she would be interested." (Doc. No. 47, PageID# 459, ¶ 138.) Lawrence "expressed interest in the temporary detail" and so did nurse managers "Ramona Ross and Jill Elder[,]" who are both "White females." (*Id.* at ¶¶ 139, 140.) McDonough asserts that Lawrence, "Ross and Elder rotated into the position" "[t]o meet the needs of the nursing service[ ] and consistent with past practice and VA Policy[.]" (*Id.* at ¶ 141.) Lawrence "never asked Dr. Richardson about a temporary promotion pay for the detail" and the "'detail memo'" Lawrence received "[p]rior to starting the detail" "describing the particulars" of the position "did not mention promotion pay." (*Id.* at PageID# 460, ¶¶ 143, 144, 145.) McDonough asserts that "[n]either [Lawrence], Ross nor Elder received promotion pay" for the detail because TVHS official "Cynthia Johnson elected not to" initiate the administrative process required to demonstrate that "the assignment qualifie[d] for promotion" pay. (*Id.* at ¶ 147 & n.8.) Lawrence has not disputed these asserted facts, and the Court must deem them true for purposes of summary judgment. *See*

M.D. Tenn. R. 56.01(f). Further, McDonough provides VA policies in the summary judgment record which show that the award of temporary promotion pay is optional, not mandatory, for nurses temporarily assigned to higher grade assignments. (Doc. No. 53 (citing Doc. No. 48-3).) McDonough also points to Lawrence's own deposition testimony conceding that she "[does not] believe it was discrimination that [she] didn't get promotion pay" during the detail. (Doc. No. 53-2, PageID# 1134.)

McDonough has carried his initial burden to show that, based on the record evidence, there is no genuine dispute of material fact that Lawrence was not treated less favorably than someone outside her protected class or younger who was similarly situated. Accordingly, McDonough is entitled to summary judgment on Lawrence's Title VII and ADEA discrimination claims based on the alleged denial of temporary promotion pay during her temporary detail.

### d.    Performance Review

Lawrence's third EEO complaint also alleged that "she received a lower rating than she deserved for" her 2017 performance evaluation because of her race and age. (Doc. No. 48-3, PageID# 726, ¶ 6.C.) McDonough argues that, to the extent Lawrence asserts Title VII and ADEA discrimination claims based on the low performance review, he is entitled to summary judgment because "a disagreement over a performance rating does not rise to the level [of] adverse action under the law" governing Title VII and ADEA claims. (Doc. No. 53, PageID# 970.) He argues in the alternative that the record evidence shows Lawrence received the low rating by mistake, not because of discrimination, and that the mistake was subsequently corrected. (Doc. No. 53.)

Contrary to McDonough's argument, a poor performance rating can, under certain circumstances, constitute an adverse action for purposes of discrimination claims under Title VII and the ADEA. The Sixth Circuit explained in *White v. Baxter Healthcare Corp.*, 533 F.3d 381 (6th Cir. 2008), that "'a negative performance evaluation'" may "'constitute an adverse

employment action [if] the evaluation has an adverse impact on an employee's wages or salary.'" *Id.* at 402 (quoting *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 322 (6th Cir. 2007)). "Thus, to characterize a negative performance evaluation as an adverse employment action, 'the plaintiff must point to a tangible employment action that she alleges she suffered, or is in jeopardy of suffering, because of the downgraded evaluation.'" *Id.* (quoting *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 789 (6th Cir. 2000)).

McDonough asserts the following facts regarding Lawrence's performance evaluation. Lawrence "received her annual performance rating from Dr. Richardson" "[o]n November 13, 2017[.]" (Doc. No. 47, PageID# 460, ¶ 148.) "Richardson rated [Lawrence] 'Fully Successful.'" (*Id.* at PageID# 461, ¶ 149.) Lawrence "disputed the rating[,] [ ] refused to sign it[,]" and "approached Cynthia Johnson for a higher-level review." (*Id.* at ¶¶ 150, 151.) "Several months later, Dr. Richardson met with [Lawrence] and acknowledged relying on erroneous data in the initial evaluation. To rectify the situation, Dr. Richardson raised the rating to 'Excellent.'" (*Id.* at ¶ 152.) "Still dissatisfied, [Lawrence] approached Johnson again" and "Dr. Richardson ultimately elevated the rating to 'Outstanding.'" (*Id.* at ¶¶ 153–54.) Because Lawrence has not responded to McDonough's statement of undisputed material facts, the Court must accept these facts as true for purposes of summary judgment. *See* M.D. Tenn. R. 56.01(f). The Court finds that McDonough has carried his initial burden to show that the initially poor performance rating did not constitute an adverse action as required to prevail on discrimination claims under Title VII and the ADEA.

Lawrence has not identified any record evidence sufficient to create a genuine dispute of material fact that she suffered or was at risk of suffering a tangible employment action because of the initially low performance evaluation. McDonough is therefore entitled to summary judgment on these claims.

### 2. Retaliation

Lawrence asserts retaliation claims under Title VII and the ADEA based on the same facts underlying her discrimination claims, alleging that her prior EEO activity also served as a basis for TVHS and its employees to deny her promotions, remove her from the NPSB, deny her temporary promotion pay, and give her a poor performance review. (Doc. No. 11.)

The elements of a prima facie case of retaliation are that: (1) an employee engaged in protected activity under Title VII and the ADEA; (2) the employer knew about her exercise of protected rights; (3) it subsequently took an adverse employment action against her; and (4) there was a causal connection between the adverse employment action and the protected activity. *See Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013); *Barrett*, 556 F.3d at 516.

The "burden of establishing a materially adverse employment action is less onerous in the retaliation context than in the anti-discrimination context." *Michael*, 496 F.3d at 595–96 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)); *see also Rogers*, 897 F.3d at 776; *Laster*, 746 F.3d at 731. This is because Congress enacted "[t]he antiretaliation provision" in Title VII and the ADEA "to prevent employer interference with 'unfettered access' to [the statutes'] remedial mechanisms" "by prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68 (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)). Consequently, for a retaliation claim, an employment action is adverse if "a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination."'" *Id.* (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)); *see also Rogers*, 897 F.3d at 776; *Laster*, 746 F.3d at 732; *Michael*, 496 F.3d at 596. The causation element of a retaliation claim requires "evidence that 'the unlawful retaliation would not have

occurred but for [the employee's] protected activity.'" *Thomas v. Clarksville Montgomery Cnty. Sch. Sys.*, No. 3:19-cv-00956, 2022 WL 1129643, at *9 (M.D. Tenn. Apr. 15, 2022) (quoting *Wingo v. Mich. Bell Tel. Co.*, 815 F. App'x 43, 46 (6th Cir. 2020)).

To satisfy his initial summary judgment burden regarding Lawrence's retaliation claims, McDonough must show that there are no genuine disputes of material fact that Lawrence cannot satisfy all four elements of a prima facie retaliation case or, if there are genuine disputes, McDonough must articulate a legitimate, nondiscriminatory reason for the challenged adverse actions. McDonough's arguments in favor of summary judgment on Lawrence's retaliation claims mirror his arguments regarding her discrimination claims (Doc. No. 53), and the Court's analysis of these claims is likewise similar.

With respect to Lawrence's claims that TVHS failed to promote her in retaliation for her prior EEO activity, McDonough has carried his initial summary judgment burden by demonstrating that there is insufficient record evidence to establish all four prima facie elements of each retaliation claim and articulating legitimate nondiscriminatory reasons for Lawrence's non-selections. (Doc. Nos. 47, 53.) Lawrence has not provided any evidence sufficient to create a question of fact that she can establish the required elements and that McDonough's asserted reasons were actually a pretext for retaliation. She argues that "[i]t was evident to [her] that [she] was discriminated against for [her] prior complaint and subsequent EEO claims." (Doc. No. 59, PageID# 1177.) But she has not pointed to any record evidence to support this conclusory assertion and, without more, her unsworn statements are insufficient to create genuine issues of material fact to defeat McDonough's motion. *See, e.g.*, *Anderson*, 477 U.S. at 252; *Blizzard*, 698 F.3d at 282.

The same is true for Lawrence's claim that TVHS removed her from the NPSB in retaliation for her prior EEO activity. McDonough has carried his initial summary judgment

23

burden by articulating a legitimate, nondiscriminatory reason for Lawrence's removal, the undisputed fact that she asked to be removed. (Doc. Nos. 47, 53.) Lawrence's summary judgment response does not address her NPSB removal, and she has not identified any evidence sufficient to create a genuine question of fact that McDonough's asserted reason was actually a pretext for retaliation.

Turning to Lawrence's retaliation claim based on lack of temporary promotion pay for her detail in early 2017, McDonough has carried his initial burden to show that Lawrence cannot establish the causation element because she cannot show, based on record evidence, that she would have received temporary promotion pay but for her EEO activity. Among other record evidence, McDonough points to a sworn declaration from Richardson asserting that Ross and Elder did not receive temporary promotion pay either for the same detail and that the reason Richardson did not request that Lawrence, Ross, or Elder receive promotion pay was because, in her "previous experience, the Board does not approve promotion pay for short details such as 60 or 90 days." (Doc. No. 50, PageID# 942, ¶ 8.) Lawrence has not responded to McDonough's arguments about this retaliation claim, and she has not provided any evidence sufficient to create a genuine dispute of material fact that her EEO activity was the but for cause of TVHS's failure to award her promotion pay during her temporary detail.

Lawrence's last retaliation claim is that Richardson gave her an undeservedly poor performance evaluation in November 2017 because of Lawrence's prior EEO activity. McDonough argues that Lawrence cannot satisfy the adverse action requirement for this claim and cites *Halfacre v. Home Depot, U.S.A., Inc.*, 221 F. App'x 424 (6th Cir. 2007), for the proposition that "a disagreement over a performance rating does not rise to the level [of] adverse action under the law." (Doc. No. 53, PageID# 970.) But McDonough misconstrues *Halfacre*'s holding. The

Sixth Circuit held in *Halfacre* that, under the Supreme Court's opinion in *Burlington Northern and Santa Fe Railway Co.*, a negative performance "evaluation could—in certain circumstances— 'dissuade[ ] a reasonable worker from making or supporting a charge of discrimination'" such that it would constitute an adverse action for purposes of a Title VII or ADEA retaliation claim. *Halfacre*, 221 F. App'x at 432 (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 60).

However, McDonough further argues that Lawrence cannot establish that her prior EEO activity was the but for cause of the poor evaluation in November of 2017 because Richardson "was unaware of [Lawrence's] prior EEO activity" when she delivered the evaluation. (Doc. No. 53, PageID# 970.) In support of this argument, McDonough points to a sworn response that Richardson provided in January of 2018 related to the investigation of Lawrence's third EEO complaint about the lack of temporary promotion pay during her detail in early 2017.[3] (Doc. No. 48-3.) Richardson's sworn response states that she had "no recollection of previous EEO activity, or claims by [Lawrence]." (Doc. No. 48-3, PageID# 741.) McDonough has therefore carried his initial burden to show the absence of a genuine dispute of material fact that Lawrence's prior EEO activity was not a but for cause of the low performance evaluation.

Furthermore, McDonough asserts in his statement of undisputed material facts that Richardson mistakenly "rel[ied] on erroneous data in the initial evaluation" and, "[t]o rectify the situation, Dr. Richardson raised the rating to 'Excellent[ ]'" and "ultimately elevated the rating to 'Outstanding.'" (Doc. No. 47, PageID# 461, ¶¶ 152, 154.) Lawrence has not responded to these

---

[3] The form template on which Richardson typed her sworn statement appears to be misdated. Richardson handwrote that she signed the statement on the tenth of January, but the year printed on the form is 2017. (Doc. No. 48-3.) Because Lawrence had not completed the detail that is the subject of the relevant EEO complaint in January 2017, and because the record shows that Lawrence signed her own sworn statements related to this EEO investigation in December 2017 and January 2018 (*id.*), it is reasonable to infer that Richardson signed her statement in January 2018 and neglected to update the preprinted year.

asserted facts or to McDonough's summary judgment arguments about this claim. She therefore has not produced evidence sufficient to create a question of fact that the low performance review qualified as an adverse action or that McDonough's asserted reason for the initially low performance review is actually a pretext for retaliation.

Accordingly, McDonough is entitled to summary judgment on Lawrence's retaliation claims.

### 3.     Hostile Work Environment

Title VII and the ADEA "offer[ ] employees protection from a 'workplace [ ] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . .'" *Barrett*, 556 F.3d at 514 (second and third alterations in original) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)); *see also Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996) (holding "that a plaintiff may advance a hostile-environment claim under the ADEA"). The elements of a prima facie case of a hostile work environment based on race or age are that: (1) an employee was a member of a protected class; (2) she was subject to unwelcome harassment based on her race or age; (3) the harassment unreasonably interfered with her work performance by creating an environment that was intimidating, hostile, or offensive; and (5) there is some basis for employer liability. *See Barrett*, 556 F.3d at 515; *Crawford*, 96 F.3d at 834–35.

McDonough argues that there is no genuine dispute of material fact that Lawrence cannot establish a prima facie case of a hostile work environment because the record evidence shows that "[h]er claims amount to petty, infrequent incidents, and ordinary tribulations of the workplace" that do not amount to "a working environment permeated with discriminatory intimidation, ridicule, and insult." (Doc. No. 53, PageID# 971.) Although Lawrence alleges in her amended complaint that TVHS employees harassed, bullied, and referred to her using racial slurs, she has

not offered any evidence at summary judgment to support these allegations. Lawrence's amended complaint is not signed under penalty of perjury, and its allegations alone therefore cannot satisfy her burden to respond to McDonough's well-supported motion for summary judgment. *See King v. Harwood*, 852 F.3d 568, 578 (6th Cir. 2017) (holding that "'a verified complaint . . . satisfies the burden of the nonmovant to respond' to a motion for summary judgment, unlike 'mere allegations or denials' in unverified pleadings" (alteration in original) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 385 (6th Cir. 1999) (en banc))); *see also El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (holding that a complaint signed "under penalty of perjury . . . carries the same weight as would an affidavit for the purposes of summary judgment"). Lawrence has not presented any evidence beyond the pleadings to support her Title VII and ADEA hostile work environment claims. *See* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2721 (4th ed. updated Apr. 2023) ("The importance of going beyond the pleadings on a summary-judgment motion is emphasized by the requirement in 56(c)(1) that a party either asserting that a fact cannot be or that it is genuinely disputed 'must' support that assertion by citation to materials in the record.").

McDonough is therefore entitled to summary judgment on Lawrence's hostile work environment claims as well.

## IV.      Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that McDonough's motion for summary judgment (Doc. No. 45) be GRANTED and that the Court enter summary judgment in McDonough's favor on Lawrence's remaining claims.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided.

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 26th day of February, 2024.

ALISTAIR E. NEWBERN
United States Magistrate Judge